# IN THE COURT OF APPEALS OF IOWA

No. 21-0225
Filed April 28, 2021

**IN THE INTEREST OF Z.P.,**
**Minor Child,**

**A.M., Mother,**
    Appellant.
_____

Appeal from the Iowa District Court for Polk County, Romonda Belcher, District Associate Judge.

A mother appeals the termination of her parental rights to her child. **AFFIRMED.**

Michael A. Horn of Horn Law Offices, Des Moines, for appellant mother.

Thomas J. Miller, Attorney General, and Michelle R. Becker and Ellen Ramsey-Kacena, Assistant Attorneys General, for appellee State.

Erin Mayfield of Youth Law Center, Des Moines, attorney and guardian ad litem for minor child.

Considered by Mullins, P.J., Greer, J., and Mahan, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2021).

**MAHAN, Senior Judge.**

A mother appeals the termination of her parental rights to her child, born in 2017.[1] She contends the State failed to prove the ground for termination cited by the juvenile court, the court should have granted additional time to work toward reunification, and the court should have applied statutory exceptions under Iowa Code section 232.116(3) (2020) to preclude termination. We affirm.

## I. *Background Facts and Proceedings*

This family came to the attention of the department of human services in October 2019, due to concerns about the parents' use of methamphetamine in the home while caring for Z.P. and the mother's two older children.[2] The children were removed from the home and adjudicated in need of assistance. Z.P. was initially placed in the care of his maternal uncle and later with his paternal grandmother, where he has remained. The older children were placed with their maternal grandmother.

Shortly after the children's removal, the father was arrested for a probation violation and placed in jail. The mother engaged in services but "continue[d] to provide positive drug screens and d[id] not take responsibility or engage in services that properly address her substance use issues." Upon little progress toward reunification, the State filed a petition for termination of parental rights with regard to Z.P.[3] The termination hearing was held in December 2020. The record before

---

[1] The father's parental rights were also terminated. He does not appeal.

[2] The older children have been the subject of prior founded child-protective assessments in 2008 and 2011 relating to the mother's use of illegal drugs.

[3] Meanwhile, the court entered a permanency order establishing a guardianship over the two older children with the maternal grandmother. On the mother's appeal, this court affirmed that order and declined her request for an additional six

the juvenile court indicated Z.P. had been removed from the mother's care for more than one year, the mother's visits recently got "cut off" because she refused a drug test, and the mother admitted to using illegal drugs within the past two weeks. The mother requested "[a]t least another six months" to "get a hold on [her] addiction," but she also believed Z.P. could "safely be placed in [her] care today." The department caseworker and guardian ad litem recommended termination of the mother's parental rights.

Following the termination hearing, the court entered its order terminating the mother's parental rights pursuant to Iowa Code section 232.116(1)(h). The mother appeals.

## II. *Standard of Review*

Appellate review of termination-of-parental-rights proceedings is de novo. *In re L.T.*, 924 N.W.2d 521, 526 (Iowa 2019). Our primary consideration is the best interests of the child, *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006), the defining elements of which are the child's safety and need for a permanent home. *In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011).

## III. *Discussion*

The mother challenges the sufficiency of the evidence supporting the ground for termination cited by the juvenile court. She does not contest the child is three years of age or younger, has been adjudicated a child in need of assistance, and has been removed from the parents' physical custody for at least six of the last twelve months. *See* Iowa Code § 232.116(1)(h)(1)–(3). But she

---

months to work toward reunification. *See In re H.P.*, No. 20-1418, 2021 WL 210969, at *1 (Iowa Ct. App. Jan. 21, 2021).

claims "the State failed to show by clear and convincing evidence that Z.P. not be returned safely to the home" at the time of the termination hearing. *See id.* § 232.116(1)(h)(4).

Despite the mother's acknowledgment at the termination hearing that she "did weed" "[t]wo weeks ago" and used methamphetamine "[p]robably a week prior to that," she claims on appeal the State "did not provide any direct evidence that the child could not be placed in her care with services despite recent drug usage." The mother's track record of participation in services shows otherwise; she admitted she had not completed an updated substance-abuse evaluation, attended any individual therapy or treatment, or provided any drug screens since the October 2020 permanency hearing.[4]

The mother also contends on appeal that "she had done everything DHS asked of her." But at the termination hearing, she acknowledged that "maintaining [her] sobriety was one of the expectations that the department had for [her]," and when asked if she had done that, she answered, "No, I didn't, but there were times when I did."[5] We do not discount the mother's testimony about her employment, her apartment, and her belief she is "not financially struggling," but we cannot agree with her assertion that "[a]ll [Z.P.'s] basic needs would be met" if he was

---

[4] The mother admitted her sweat-patch test was positive for methamphetamine in August, but she stated it was "inaccurate." She also had an additional sweat-patch test that was positive for methamphetamine around that time. She admitted she took a sweat patch off in September. Since the permanency hearing in October, she refused to take two additional tests because she did not "trust" them.

[5] She stated her longest period of sobriety during this proceeding was "four months straight," but she "ended up relapsing." She could not remember "which months it was," but "[i]t was after January" 2020.

placed in her custody considering her admitted recent drug use and unaddressed addiction.[6]

Lastly, the mother alleges the court failed to consider the "sibling bond" between the child and his older half-siblings "in determining the long term best interests of Z.P." But the mother agreed at the termination hearing Z.P. does not see his half-siblings often because they are in different placements. On this topic, the guardian ad litem stated "the information that [Z.P.] has not had contact with his siblings is not accurate," but "it's in both of the paternal grandmother's and maternal grandmother's interest to continue that relationship between the siblings."

Ultimately, the juvenile court found, "There are ongoing concerns about the safety of the child if returned to the care and custody of [the mother]," and concluded "[t]he child cannot be safely returned to his mother." Considering the mother's lack of progress and unwillingness or indifference to follow through with treatment and refrain from use of illegal drugs, despite the services offered over the past year or more since the child's removal, we concur in the juvenile court's finding the child could not be returned to her custody at the time of the termination hearing. We further agree with the guardian ad litem "that the evidence and the history before the Court indicates that an extension would not be appropriate and that even given additional time [it] would not be reasonably likely that [Z.P.] could safely be returned to [the mother's] care." Under these circumstances, a six-month extension was not warranted. Iowa Code section 232.116(1)(h) was satisfied.

---

[6] The mother believed she "need[ed] inpatient treatment in order to stay clean."

The mother also contends the court did not need to terminate her parental rights because the child was placed with a relative and due to the parent-child bond. *See* Iowa Code § 232.116(3)(a), (c). The exceptions to termination of parental rights found under section 232.116(3) are permissive, not mandatory. *In re A.S.*, 906 N.W.2d 467, 475 (Iowa 2018). It is within the court's discretion to consider the circumstances of the case and the best interests of the child in determining whether to apply the factors. *In re A.M.*, 843 N.W.2d 100, 113 (Iowa 2014); *In re C.K.*, 558 N.W.2d 170, 174 (Iowa 1997) (noting the "determination to terminate a parent-child relationship is not to be countermanded by the ability and willingness of a family member to take the child"). Considering Z.P.'s young age and need for permanency, the fact he is placed with his paternal grandmother does not preclude termination. Permanency cannot be established by a guardianship, and Z.P. should not have to wait in limbo while the mother attempts to put her life in order. With regard to the parent-child bond, we have no reason to disagree with the mother's testimony that Z.P. "was a mama's boy from day one," and their "relationship's pretty close." But, there is no evidence the mother's relationship with Z.P. is so close it would be detrimental to him if termination occurred. We conclude termination is in this child's best interests, and no permissive statutory exception should be applied to preclude termination. We affirm the decision of the juvenile court to terminate the mother's parental rights.

**AFFIRMED.**